IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| JENNIFER A. GREENLY A/K/A JENNIFER A. GRACE AND DEAN M. GREENLY, | : | |
| | : | |
| DEBTORS. | : | BANKRUPTCY NO. 11-15397-MDC |

# MEMORANDUM

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

## INTRODUCTION

Before this Court for consideration is the Chapter 7 Trustee, Christine C. Shubert's ("Trustee") objection (the "Objection") to Jennifer A. Greenly ("Mrs. Greenly") and Dean M. Greenly's ("Mr. Greenly," collectively the "Debtors") claim of exemptions to Annuity Policy 011800CS01z (the "Annuity"), and payments received by Mrs. Greenly from the Annuity. The Debtors originally only scheduled monthly payments received from the Annuity (the "Monthly Payments") and claimed them as exempt pursuant to 11 U.S.C. §§522(d)(10)(C), 522(d)(10)(E), and 522(d)(11)(E) (the "Claimed Exemptions"). The Debtors subsequently amended their schedules to add previously undisclosed scheduled lump-sum distributions to be paid to Mrs. Greenly from the Annuity (the "Distribution Payments" and together with the Monthly Payments, "Payments"). The Debtors now claim that the Payments are either (1) exempt under the Claimed Exemptions, or (2) not property of Mrs. Greenly's estate pursuant to 11 U.S.C. §541(c)(2) because they are derived from a spendthrift trust.

After an evidentiary hearing on the Objections and consideration of the parties' post-hearing filings, this Court finds that: (i) although the Annuity is not property of the Debtors' estate, Mrs. Greenly's interest in the Payments is property of the Debtors' estate, (ii) Mrs. Greenly's interest in the Monthly Payments may be claimed as exempt pursuant to the Claimed Exemptions, (iii) Mrs. Greenly's interest in the Distributions Payments are not exempt under any of the Claimed Exemptions, and (iv) the

Trustee's Objections will be sustained in part, and denied in part.

**Procedural History**

   The Debtors initiated this bankruptcy case by filing on July 8, 2011 (the "Petition Date") a

petition for chapter 7 relief.  On the Petition Date, the Debtors also filed their bankruptcy schedules.  In

the Debtors' original Schedule B, the Debtors provided the following information regarding the Payments

received.

| Description of Property | Applicable Exemption | Value of Claimed Exemption | Current Market Value of Property |
|---|---|---|---|
| Annuities $1,250.00 Monthly | 11 U.S.C. §522(d)(5) | $1,250.00 | $1,250.00 |

The original schedule B contains no disclosure of the Distribution Payments.

   The initial meeting of creditors was held on August 8, 2011.  Prior to the meeting of creditors, the

Debtors had not disclosed the Distribution Payments.  At this meeting, the Trustee became aware of Mrs.

Greenly's interest in the Annuity and requested the Debtors provide to the Trustee documents relating to

Mrs. Greenly's interest in the Annuity.  To allow the production of such documents and the Trustee's

review of the same, the meeting of creditors was continued.

   The next day on August 9, 2011, the Debtors filed amended Schedules B and C.  In the amended

Schedule B, the Debtors identified the Annuity as property owned solely by Mrs. Greenly.  For whatever

reason, the Debtors' amended Schedule B again did not disclose Mrs. Greenly's interest in the

Distribution Payments.  Debtors' counsel claims that he was not aware of the Distribution Payments and,

as a result, failed to include Mrs. Greenly's interest in the Distribution Payments in either the Debtors'

original or amended schedules.  In the Debtors' amended Schedule C, the Debtors provided the following

information regarding the Payments.

| Description of Property | Applicable Exemption | Value of Claimed Exemptions | Current Market Value of Property |
|---|---|---|---|
| Annuities $1,250.00 Monthly | 11 U.S.C. §522(d)(5) 11 U.S.C. §522(d)(10)(E) 11 U.S.C. §522(d)(11)(E) | $1,250.00 per month $1,250.00 per month $1,250.00 per month | $1,250.00 |

Once again, the Debtors' Schedule C contained no reference to the Distribution Payments.

The Debtors did not immediately produce copies of the Annuity or any related documents as requested by the Trustee.  Instead, the Trustee was forced to file a motion dated September 2, 2011 to compel the Debtors to turn over documents pertaining to Mrs. Greenly's settlement of her personal injury claim, the source of the Annuity, including but not limited to the Annuity, the Settlement Agreement, and associated documents.  By an Order dated September 28, 2011, this Court granted the Trustee's motion and required the Debtors to produce the requested documents within three days of the entry of the Order.

Despite this Court's Order, the Debtors did not produce to the Trustee the requested documents.  Instead, the Trustee filed a motion dated October 12, 2011 to hold the Debtors in contempt of this Court's September 28, 2011 Order.  Thereafter, the Debtors finally produced to the Trustee the requested documents and the Trustee withdrew the contempt motion by a praecipe dated October 27, 2011.  The Trustee alleges that it was not until its receipt of these documents that the Debtors finally disclosed Mrs. Greenly's interest in the Distribution Payments.

On November 18, 2011, the Trustee filed the Objection to the Debtors' Claimed Exemptions.  A hearing on the Trustee's original objection was scheduled to occur on December 27, 2011, and was later continued to February 21, 2012 (the "Hearing").  Prior to the Hearing, the parties submitted the Stipulation.  Pursuant to the Stipulation, the parties consented to the admissibility of certain documents attached as exhibits.  In addition, the parties stipulated to certain facts relating to the origination of the Annuity and Mrs. Greenly's present circumstances.

At the Hearing, the Trustee outlined her arguments for why Mrs. Greenly was not entitled to the Claimed Exemptions.  With regard to §522(d)(11)(C), the Trustee argued that Mrs. Greenly was not entitled to this exemption because she is presently not disabled, unemployed or ill as a result of the accident and is presently employed as a retail clerk working in excess of 30 hours per week.  With regard to §522(d)(10)(E), the Trustee argued that Mrs. Greenly was not entitled to this exemption because she is not disabled, unemployed or ill as a result of the accident and she has not proved that these monies are not necessary to support herself and her family.  With regard to §522(d)(11)(E), the Trustee argued that Mrs.

Greenly was not entitled to this exemption because she has provided no evidence that the Annuity

represents compensation for lost future earnings and she has not proved that these monies are not

necessary to support herself and her family.

In response, the Debtors did not address the substance of the Trustee's arguments.  Instead, the

Debtors argue that the Payments are improperly characterized as property of Mrs. Greenly's bankruptcy

estate.  The Debtors argue that Mrs. Greenly's interest in the Annuity is akin to a beneficiary's interest in

a spendthrift trust.  Specifically, the Debtors claim that the Settlement Agreement did not provide Mrs.

Greenly with the right to sell, encumber or otherwise transfer her right to payment of the Monthly

Payments and Distribution Payments thereby evidencing a lack of sufficient control over the Annuity to

render her future interest in the Monthly Payments and Distribution Payments property of her present

bankruptcy estate.  In relevant part, the Settlement Agreement provides:

> Claimant acknowledges that the Periodic Payments cannot be accelerated, deferred,
> increased or decreased by the Claimant or any Payee, nor shall any Payee have the
> power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part
> thereof, by assignment or otherwise.

Settlement Agreement, §3.0.

Debtors' counsel advised that it was his intention to file amended schedules removing reference

to the Annuity.  On the day after the Hearing, February 22, 2012, the Debtors did in fact file a second-

amended Schedule B and a second-amended Schedule C.  In the Debtors' second-amended Schedule C,

the Debtors provided the following information regarding the Payments received.

| Description of Property | Applicable Exemption | Value of Claimed Exemptions | Current Market Value of Property |
|---|---|---|---|
| Annuities $1,250.00 Monthly | 11 U.S.C. §522(d)(5) 11 U.S.C. §522(d)(10)(E) 11 U.S.C. §522(d)(11)(E) | $1,250.00 per month $1,250.00 per month $1,250.00 per month | $1,250.00 |
| Future payments in accordance with the terms of an annuity agreement | 11 U.S.C. §522(d)(5) 11 U.S.C. §522(d)(10)(E) 11 U.S.C. §522(d)(11)(E) | 100% 100% 100% | $508,730.00 |

In the second-amended Schedule B, the Debtors identified both Mrs. Greenly's interest in the

Monthly Payments and her interest in the future Distribution Payments in the amount of $508,730.  In the

4

second-amended Schedule C, the Debtors identified for the first time both Mrs. Greenly's interest in the

Monthly Payments and the Distribution Payments and claimed the entirety of both to be exempt pursuant

to the Claimed Exemptions.

At the request of Debtors' counsel, this Court issued an Order setting forth a briefing schedule to

allow the parties to address whether the Annuity is property of Mrs. Greenly's bankruptcy estate and, in

the alternative, whether Mrs. Greenly's Claimed Exemptions are appropriate.  As a result, this Court did

not decide the merits of the Trustee's Objection.  This Court took under advisement the issue of whether

the Annuity should be considered property of the Debtors' estate and, if so, whether Mrs. Greenly is

entitled to the Claimed Exemptions.  Both the Trustee and the Debtors have since filed their respective

briefs.

## THE ANNUITY BACKGROUND[1]

On or about September 24, 1995, Mrs. Greenly was involved in a motor vehicle accident (the

"Accident").  At the time, she was nineteen years old.  Mrs. Greenly claims to have suffered a broken

neck and has had three surgeries related to her injuries.  In addition, Mrs. Greenly claims that she

presently suffers migraine headaches resulting from her injuries.  Despite her claim relating to her

migraines, the parties agree that Mrs. Greenly is presently not disabled, sick or unemployed as a result of

the Accident.  Stipulation of Facts ("Stipulation"), ¶19.

Based on injuries sustained from the Accident, Mrs. Greenly asserted a claim against Penn Land

Insurance Company (the "Insurer") for underinsured motorist benefits.  On December 18, 1996, Mrs.

Greenly and the Insurer settled her claims.  Their settlement was memorialized in a Settlement Agreement

and Release dated December 18, 1996 (the "Settlement Agreement").  Stipulation, Exhibit E.  The

Settlement Agreement provided for an initial payment of $250,000; the sum of $1,250 per month for the

life of Mrs. Greenly (the Monthly Payments) and a schedule of lump-sum distributions to occur

approximately once every three years from January 1, 2000 through January 1, 2040 (the Distribution

Payments").  By its terms, the Settlement Agreement provides that it is governed by Pennsylvania law.

---

[1] The facts set forth herein are derived from the Stipulation submitted by the parties.

Settlement Agreement, §11.0.

The Settlement Agreement provided for the Insurer to make a "qualified assignment" to Providian Assignment Corp. (the "Assignee" or "Providian") of its obligation to make the Payments. Settlement Agreement, §5.1.  In addition, the Settlement Agreement provided the Insurer the right to use the Payments to purchase an annuity policy from Commonwealth Life Insurance Company ("Commonwealth").  Settlement Agreement, §6.0.  As to what party would own the annuity, the Settlement Agreement provided:

> "The Insurer or the Assignee *shall be the sole owner of the annuity policy* and shall have all rights of ownership.  The Insurer or the Assignee may have Commonwealth Life Insurance Company mail payments directly to the Payee(s)."

Settlement Agreement, §6.0 (emphasis added).

On November 12, 1996, the Insurer exercised its right pursuant to the Settlement Agreement to purchase the Annuity from Commonwealth to fund the Payments.  As provided by the terms of the Annuity, the commencement date of the Annuity was January 1, 1997.  The express terms of the Annuity defined the owner of the Annuity to be Providian.  Stipulation, Exh. F, p.8.

Consistent with the terms of the Settlement Agreement, the Insurer exercised its right to make a qualified assignment of its obligation to make the Payments to Providian.  The qualified assignment was memorialized by a Qualified Assignment, Release and Pledge Agreement dated January 1, 1997 (the "Qualified Assignment").  Stipulation, Exh. F, p.11.  The Qualified Assignment is governed by Kentucky law and is significant in that it defines the legal status of the respective parties, inclusive of Mrs. Greenly's interest in the Annuity.  In relevant part, the Qualified Assignments states: "The Assignee-Debtor (Providian) desires to make the Claimant-Secured Party(s) [Mrs. Greenly] *a secured creditor* with respect to the Periodic Payments."  Stipulation, Exh. F, p.11 (emphasis added).  In addition, the Qualified Assignment provides:

1. Assignee-Debtor [Providian] hereby pledges and grants a security interest in the Annuity Contract(s) to the Claimant-Secured Party(s) [Mrs. Greenly] to secure Assignee-Debtor's [Providian] promise to make the Periodic Payments…

2. The Assignee-Debtor [Providian] shall have the right to receive payments under and retain all

rights and ownership interest in the Annuity Contract(s) so long as the Assignee-Debtor [Providian] has not failed to make any of the Periodic Payments due to insolvency or bankruptcy.

3.   In the event Assignee-Debtor [Providian] fails to make any of the Periodic Payments due to insolvency or bankruptcy and such default is not cured within ninety (90) days of the payment due date, all rights and ownership interest in the Annuity Contract(s) shall vest in Claimant-Secured Party(s) [Mrs. Greenly] upon Assignee-Debtor's [Providian] receipt of notice of such default from the Claimant-Secured Party(s) [Mrs. Greenly].  Claimant-Secured Party(s) [Mrs. Greenly] shall then become owner(s) of the Annuity Contract(s), and all obligations of the Assignee-Debtor under this Agreement shall terminate.

4.   Assignee-Debtor [Providian] represents and warrants that it is the legal and beneficial owner of the Annuity Contract(s) free and clear of any liens, security interests, other charges or encumbrances, except for the security interest under this Agreement.

Stipulation, Exh. F, p.12.

As to the assignability of the party's respective rights, the Qualified Assignment provides:

The parties acknowledge that the Periodic Payments may not be accelerated, deferred, increased, decreased, anticipated, or sold.  The parties also acknowledge that the Periodic Payments may not be assigned or encumbered, except by the order of a court of competent jurisdiction.

Stipulation, Exh. F, p.11.  Similarly, the Settlement Agreement provides:

3.0 Payee's Rights to Payment:

Claimant acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Claimant or any Payee, nor shall any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

Settlement Agreement, §3.0.

Since the Petition Date and as of February 20, 2012, it appears that Mrs. Greenly has received at least $8,750 in Payments[2] and is entitled to receive at least an additional $883,000 in Payments.  She received on January 1, 2012, the most recent Distribution Payment in the amount of $27,049.  This payment is now being held by Debtors' counsel in his IOLTA account pending this Court's determination.  Mrs. Greenly is scheduled to receive future Distribution Payments in the aggregate amount of $481,674 according to the following schedule:

---

[2] Under the terms of the Annuity, Mrs. Greenly should have received at least seven (7) Payments since the Petition Date.

1. $33,425 to be paid on January 1, 2015.

2. $40,365 to be paid on January 1, 2018.

3. $47,062 to be paid on January 1, 2021.

4. $54,871 to be paid on January 1, 2024.

5. $63,946 to be paid on January 1, 2027.

6. $89,060 to be paid on January 1, 2033.

7. $152,945 to be paid on January 1, 2040.

Settlement Agreement, §2.2.

Mrs. Greenly is presently employed as a retail clerk and works, on average, in excess of 30 hours per week.  For the two months prior to the Petition Date, Mrs. Greenly's monthly income was $892, not inclusive of the Monthly Payments.  Stipulation, ¶24.  For the same period, her monthly expenses were $1,858 giving her a negative monthly net income, exclusive of the Monthly Payments, of $(966).  Stipulation, ¶25.  If the Monthly Payments are included in her monthly income, she has a positive monthly net income of $284.

**DISCUSSION**

**Mrs. Greenly's Interest in the Annuity**

As delineated by §541, the filing of a bankruptcy petition creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. §541(a)(1).  While broad, certain exceptions apply to exclude certain interests held by a debtor from inclusion in her estate.  Of relevance here, §541(c)(2) states "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that it enforceable under applicable nonbankruptcy law is enforceable in a case under this title."  11 U.S.C. §541(c)(2).  The Debtors argue that Mrs. Greenly's interest in the Annuity and the resulting Payments is the equivalent of a beneficiary's interest in a spendthrift trust and therefore should be excluded from her estate pursuant to §541(c)(2).  The Debtors have the evidentiary burden of establishing that their interest in the Annuity is not property of their bankruptcy estate.

A debtor's interest in property is determined by state law. *Butner v. United States*, 440 U.S. 48,

8

55 (1979) ("Property interests are created and defined by state law."); *In re O'Dowd*, 233 F.3d 197, 202 (3d Cir. 2000) ("While federal law defines what types of property comprise the estate, state law generally determines what interest, if any, a debtor has in property.").  In their post hearing briefs, the Debtors contend that the Annuity and the resulting Payments are not property of the Debtors' estate because the Annuity is a trust under Pennsylvania law.  *Goodwin v. McMinn*, 44 A. 1094, 1095 (Pa. 1899) (defining a trust as a relationship "where the legal estate is in one and the equitable estate in another.")  Debtors assert that pursuant to the Settlement Agreement, "Penn Land Insurance Company holds the legal estate and Mrs. Greenly holds the equitable estate."  In response, the Trustee argues that the plain language of the Annuity indicates that Mrs. Greenly is the owner of the Annuity and therefore Mrs. Greenly's interest could not be held in trust.  Neither party is correct.

According to both Kentucky and Pennsylvania law,[3] an unambiguous written contract must be strictly enforced according to the plain meaning of its express terms and without resort to extrinsic evidence.  *Western United Life Assur. Co. v. Hayden*, 64 F.3d 833, 837 (3d Cir. 1995) (stating that where a contract is clear and unambiguous, a court must construe it by its contents alone); *Dept. of Transp. v. Manor Mines, Inc*., 565 A.2d 428, 432 (Pa. 1989); *Allen v. Lawyers Mut. Ins. Co. of Kentucky*, 216 S.W.3d 657, 659 (Ky. App. 2007).  As also required by both Pennsylvania and Kentucky law, courts will construe together all agreements made as a part of a single transaction.  *Western United Life Assurance Company v. Hayden*, 64 F.3d 833, 842 (3d Cir. 1995) (construing as a whole and reading together all documents - including settlement agreement, qualified assignment and annuity - entered into to effect a structured settlement); *CGU Life Insurance Company of America v. Metropolitan Mortgage & Securities Co., Inc., et al*., 131 F.Supp.2d 670, 675 (E.D. Pa. 2001) (construing as a whole agreements entered into to effect a structured settlement); *Cook United, Inc. v Waits*, 512 S.W.2d 493, 495 (Ky. 1974) ("all writings that are part of the same transaction are interpreted together").  In examining all three documents, this Court finds it clear that neither Mrs. Greenly nor Penn Land Insurance Company are the owner of the

---

[3] The Settlement Agreement provides that it is governed by Pennsylvania law.  The Annuity sets forth Kentucky as the governing law.

Annuity.

Contrary to the Trustee's reading of the Annuity, the Annuity does not designate Mrs. Greenly as its owner. The Annuity designates Mrs. Greenly as the "Annuitant." Stipulation, Exh. F, p.8. Similarly, contrary to Debtors' reading of the Annuity, the Annuity does not define Penn Land Insurance Company as the owner. To define the "Owner" of the Annuity, the Annuity states "You, the Owner, are named in the application." The Application, a document that is expressly incorporated into the terms of the Annuity, names the "Owner" of the Annuity as Providian. Stipulation, Exh. F, p.8. By designating Mrs. Greenly as the Annuitant, the Annuity provides that she "is the person to whom we will pay the Annuity Amount if she is living on the Annuity Commencement Date." Stipulation, Exh. F, p.6. Consistent with decisions addressing similar language used to effectuate structured settlements, this Court finds that this language makes clear that Mrs. Greenly does not have any ownership rights in the Annuity. *CGU Life Insurance Company of America v. Metropolitan Mortgage & Securities Co., Inc., et al.*, 131 F.Supp.2d 670, 675-76 (E.D. Pa. 2001) (holding that annuitant payee of structured settlement designed to accord with §§103 and 104(a)(2) of the IRS Code had no ownership or other rights in the annuity).

The designation of Providian as the owner of the Annuity is necessary to comply with the requirements of §§104(a)(2) and 130(c) of the Internal Revenue Code. By entering into the Settlement Agreement, Qualified Assignment and Annuity, the parties intended to create a structured settlement under §130 and §104(a)(2) of the Internal Revenue Code. 26 U.S.C. §§104(a)(2), 130. The Settlement Agreement states "[a]ll sums set forth herein constitutes damages on account of personal injuries or sickness within the meaning of Section 104(a)(2) and 130(c) of the Internal Revenue Code of 1986, as amended." Settlement Agreement, §2.2. Similarly, the Qualified Assignment states "[t]he Assignor and the Assignee-Debtor desire to effect a 'qualified assignment' in accordance with Section 130(c) of the Internal Revenue Code of 1986, as amended..." and that "[t]he Periodic Payments constitute damages on account of personal injury or sickness in a case involving physical injury or physical sickness within the meaning of Sections 104(a)(2) and 130(c) of the Code." Stipulation, Exh. F, p.11. If Mrs. Greenly was designated as the owner of the Annuity, the tax benefits of the structured settlement would be lost.

*Western United Life Assurance Company v. Hayden*, 64 F.3d 833, 839 (3d Cir. 1995) (recognizing that if

payee was designated as the owner of the annuity the payment stream must be considered income).  As

provided for by Sections 104(a)(2) and 130(c) of the Internal Revenue Code, structured settlements

permits the payments received by a personal injury claimant in satisfaction of its claims to receive special

tax treatment.  As explained by Justice Alito in a decision he authored while a member of the Third

Circuit Court of Appeals:

> Structured settlements are a type of settlement designed to provide certain tax
> advantages.  In a typical personal injury settlement, a plaintiff who receives a lump-sum
> payment may exclude this payment from taxable income under I.R.C. §104(a)(2).
> However, any return from the plaintiff's investment of the lump-sum payment is taxable
> investment income.  In contrast, in a structured settlement the claimant receives periodic
> payments rather than a lump sum, and all of these payments are considered damages
> received on account of personal injuries or sickness and are thus excludable from income.
> Accordingly, a structured settlement effectively shelters from taxation the returns from
> the investment of the lump-sum payment…
>
> A key characteristic of a structured settlement is that the beneficiary of the settlement
> must not have actual or constructive receipt of the economic benefit of the payments.
> Rev. Rul. 79-220.  In a structured settlement, the settling defendants "purchase of a[n]…
> annuity contract from the other insurance company [is] merely an investment by [the
> settling defendant] to provide a source of funds for [him] to satisfy [his] obligation to [the
> plaintiff]."  *Id.*  The arrangement is "*merely a matter of convenience to the [defendant]
> and d[oes] not give the recipient any right to the annuity itself.*"  *Id.*

*Western United Life Assurance Company v. Hayden*, 64 F.3d 833, 839 (3d Cir. 1995) (emphasis in

original).

As recognized by I.R.S. Revenue Ruling 79-220, "if a lump-sum payment is invested for the

benefit of a claimant who has actual or constructive receipt or the economic benefit of the lump-sum

payment, only the lump-sum payment is received as damages within the meaning of section 104(a)(2) of

the Code, and none of the income from the investment of such payment is excludable under section 104."

Rev. Rul. 79-220.  In other words, if Mrs. Greenly had been designated to be the owner of the annuity, the

funds used by Providian to purchase the annuity from the Insurer would have constituted her non-taxable,

personal injury damages and all of the Payments would be rendered taxable income or capital gains.  To

avoid this outcome, courts have consistently recognized that the payee named by an annuity purchased to

effectuate a structured settlement may not be recognized as having an ownership interest in the annuity.

11

*Liberty Life Assurance Co. of Boston v. Gilbert*, 507 F.3d 952, 959 (6th Cir. 1007) (finding that payee of

structured settlement has no ownership interest in annuity); *Wentsworth v. Jones*, 28 S.W.2d 309, 314

(Ky. App. 2000) (holding that payees under structured settlement "retained none of the incidents or

accouterments of ownership in the annuities.").  Instead, each of the periodic payments received pursuant

to a structured settlement are considered to be payments received as personal injury damages within the

meaning of section 104(a)(2) of the IRS Code.

 This Court further recognizes that although the terms of the Annuity direct the Insurer to make

payment to Mrs. Greeley, Providian retained the right to receive payment.  As provided by the Qualified

Assignment:

> The Assignee-Debtor will have the Annuity Issuer send payments under the Annuity
> Contract(s) directly to the named payee(s).  Such direction of payments shall be solely for
> the Assignee-Debtor's convenience and shall not provide the Claimant-Secured Party(s)
> and/or any named payees with any rights of ownership or control over the Annuity
> Contract(s) or against the Annuity Issuer.

Stipulation, Exh. F, p.11.

 Consistent with this language and the requirements of §104(a)(2) of the IRS Code, Mrs. Greenly

is nothing more than a third-party beneficiary of the Annuity.  *In re Hayes*, 168 B.R. 717, 729 (Bankr. D.

Kan. 1994) (finding that annuitant-payee of structured settlement was the beneficiary, and not the owner,

of the annuity purchased to fund the payments); *Wentsworth v. Jones*, 28 S.W.2d 309, 313-14 (Ky. App.

2000) (recognizing that payees of structured settlement annuities are "incidental third-party

beneficiaries").  However, this Court does not find that Mrs. Greenly's status as a third-party beneficiary

of the Annuity precludes her from having a legal or equitable interest in the Payments as of the Petition

Date.

**Mrs. Greenly's Interest in the Payments**

 Even if Mrs. Greenly does not own the Annuity, she may still possess an interest in the Payments.

*Estate of Dwight*, 134 A.2d 45, 48 (Pa. 1957) (recognizing that the "determining characteristic [of a

structured settlement] is that the annuitant has an interest only in the payments themselves and not in any

principal fund or source from which they may be derived.").  As of the Petition Date, Mrs. Greenly's

interest in the post-petition Payments was not contingent.  By executing the Settlement Agreement, Mrs.

Greenly released her claim against the Insurer for underinsured motorist benefits.  Settlement Agreement,

§§1.0 through 1.4.  She has fully performed all of her obligations under the Settlement Agreement.  Her

interest in the post-petition Payments had vested as of the execution of the Settlement Agreement and

necessarily vested prior to the Petition Date.  *Walsh v. Helsel, et. al. (In re Helsel)*, 326 B.R. 591, 599

(Bankr. W.D. Pa. 2005) (holding that post-petition payments received in settlement of wrongful death

claim were property of the debtor's chapter 7 estate).  Unless other terms of the Annuity provide

otherwise, it appears to this Court that Mrs. Greenly's interest in the post-petition Payments should be

included among her estate's assets.

> To avoid her interests in the Payments from inuring to the benefit of her estate's creditors, Mrs.

Greenly invokes §541(c)(2) and asserts that the anti-assignment language of the Settlement Agreement

creates a spendthrift trust with the Annuity as its *res*.  The Debtors failed to cite any case law in which the

proceeds of a structured settlement were found to be held in trust for a payee-annuitant and it does not

appear that any such precedent exists.  *See, e.g., Novak v. Drake (In re Drake)*, Adv. No. 08-02118, 2012

WL 1095501, at *5 (Bankr. D. Conn. Mar. 29, 2012) (stating that the court was "unaware" of any case in

which a court has held a structured settlement may be characterized as a trust); *In re Kent*, 396 B.R. 46,

51 (Bankr. D. Az. 2008) (rejecting argument that structured settlement created a spendthrift trust).

However, this Court will address whether by operation of the anti-assignment clause the parties intended

to place Mrs. Greenly's interest in the Payments in a trust for her benefit.

> Under Pennsylvania law, anti-assignment clauses are enforceable. *GCU Life Insurance Company

of America v. Metropolitan Mortgage & Securities Co., Inc., et al.*, 131 F.Supp.2d 670, 679 (E.D. Pa.

2001) (recognizing that anti-assignment clauses in structured settlement agreements are enforceable under

Pennsylvania law); *Roeder v. Ziegler (In re Ziegler)*, 156 B.R. 151, 154 (Bankr. W.D. Pa. 1993)

(recognizing that "[a]n agreement which restricts a debtor's use of funds and is enforceable outside of

bankruptcy will be upheld by a court applying 11 U.S.C. §541(c)(2), and those funds will neither become

property of the estate nor available to his creditors.").  The enforcement of anti-assignment clauses in the

context of structured settlements has special significance.  Anti-assignment clauses are necessary to

effectuate the purpose of a structured settlement.  If Mrs. Greenly was able to assign her rights to the

Payments, Providian would lose its eligibility for favorable tax treatment of the monies it received from

the Insurer to fund the purchase of the Annuity.  Upon assignment, Providian would be obligated to report

all of the monies received from the Insurer as income thereby subjecting it to significant tax liability.

*GCU Life Insurance Company of America v. Metropolitan Mortgage & Securities Co., Inc., et al.*, 131

F.Supp.2d 670, 679 (E.D. Pa. 2001) (recognizing that "the potential for increased tax liability is the risk

which the anti-assignment clause was designed to protect against" justified enforcement of anti-

assignment clause in structured settlement agreement).

      This Court finds that the same is true under Kentucky law.  Kentucky law provides that an

annuity contract "may be assignable or not assignable, as provided by its terms."  KRS 304.12-250(1).

However, like Pennsylvania courts, Kentucky courts recognize the unique character of structured

settlements that is derived from the need to conform to the requirements §§104(a)(2) and 130(c) of the

Internal Revenue Code.  *Wentsworth v. Jones*, 28 S.W.2d 309, 313 (Ky. App. 2000) (holding that tax

considerations underlying anti-assignment provisions in structured settlement warranted enforcement of

anti-assignment clause).  In *Wentworth*, the court also recognized that the annuitant payee was not the

owner of the annuity.  The court stated:

> although [the purchaser of the annuity] clearly owed a *duty* to the obligor-tortfeasor to
> *make payments* to the tort victim-payees, the right to receive payments flowed from [the
> issue of the annuity] to [the purchaser of the annuity], rendering the payees incidental
> third-party beneficiaries who retained none of the incidents or accoutrements of
> ownership in the annuities.

*Wentsworth v. Jones*, 28 S.W.2d 309, 313-14 (Ky. App. 2000).

      Therefore, it appears that under the laws of Pennsylvania and Kentucky the anti-assignment

language that appears in the Settlement Agreement and the Qualified Assignment is enforceable.

However, neither *GCU Life Insurance* or *Wentsworth* addressed whether the effectiveness of the anti-

assignment clauses had the effect of creating a trust.  Contrary to the Debtors' arguments, this Court finds

that the anti-assignment clauses are insufficient to cause the Annuity or Mrs. Greenly's interest in the

Payments to be held in trust. *Walsh v. Hendrickson, et al. (In re Hendrickson)*, 274 B.R. 138, 147-148

(Bankr. W.D. Pa. 2002) (holding that anti-assignment language is structured settlement agreement did not

under Pennsylvania law create a trust in favor of debtor-annuitant); *Roeder v. Ziegler (In re Ziegler)*, 156

B.R. 151, 154 (Bankr. W.D. Pa. 1993) (rejecting argument that anti-assignment language in annuity

contract creates a spendthrift trust).

In *Hendrickson*, the bankruptcy court addressed whether the anti-assignment clause of a

structured settlement agreement has the effect of creating a trust for the benefit of the payee.  Addressing

the requirements under Pennsylvania law for the creation of a trust, the court explained:

> Whether a trust exists for purposes of §541(c)(2) is determined by the law of the *situs* of
> the trust *res*.  For a trust to exist under the law of Pennsylvania: (1) there must be a
> trustee, a *res* held in trust, and a beneficiary for whom it is held; (2) the trustee must hold
> legal title but not equitable title to the *res*; and (3) the settlor must intend to create a trust.
>
> None of these requirements is present in this instance.  There is no indication in the
> record that [the insurer] (or anyone else) holds the annual settlement payments in trust for
> [the debtor-annuitant].  There also is nothing to indicate that a trustee holds legal but not
> equitable title to the annual payments.  Finally, there is nothing to indicate that some
> settlor intended to create a trust.

*Walsh v. Hendrickson, et al. (In re Hendrickson)*, 274 B.R. 138, 147-148 (Bankr. W.D. Pa. 2002)

(citations omitted).

Here the same is true.  The mere existence of an anti-assignment clause is not sufficient to create

a trust and therefore not sufficient to prevent a debtor's right to payments from inuring to the benefit of

her bankruptcy estate.  *In re Jokiel*, 453 B.R. 743, 750 (Bankr. N.D. Ill. 2011) ("A contractual anti-

alienation clause is normally insufficient to prevent a payment right from becoming property of a

bankruptcy estate.").  None of the documents demonstrate any intent to create a trust for the benefit of

Mrs. Greenly or do they indicate that the Payments were to be held in trust for Mrs. Greenly.  *Sherwin v.

Oil City Nat. Bank*, 229 F.2d 835, 838-39 (3d Cir. 1956) (addressing requirements under Pennsylvania

law for the creation of a trust); *Benjamin v. J.P. Morgan Chase Bank, N.A.*, 305 S.W.3d 446, 453 (Ky.

App. 2010) (identifying first requirement under Kentucky law for the creation of a trust to "be an express

intent to create a trust.").  The documents do not designate a trustee and the Annuity may not be

considered a trust *res* because Providian is designated to be the owner of the Annuity.  *Novak v. Drake, et al. (In re Drake)*, Adv. No. 08-02118, 2012 WL 1095501, at *6 (Bankr. D. Conn. Mar. 29, 2012) (recognizing that designation of insurer as owner of annuity purchased to fund a structured settlement prevented the annuity from being considered an identifiable trust *res*); *In re Kent*, 396 B.R. 46, 52 (Bankr. D. Az. 2008) (finding failure of structured settlement agreement to designate a trustee or what constitutes the purported trust's *res* precluded a determination that payments were derived from debtor's interest in a spendthrift trust).  Not only do the documents fail to designate Mrs. Greenly as the holder of equitable title to the Annuity or Payments, the Annuity specifically designates her as the holder of a security interest in the Payments.[4]  For these reasons, the essential elements of a valid trust under Pennsylvania law or Kentucky law have not been demonstrated.  *Walsh v. Hendrickson, et al. (In re Hendrickson)*, 274 B.R. 138, 147-148 (Bankr. W.D. Pa. 2002); *Benjamin v. J.P. Morgan Chase Bank, N.A.*, 305 S.W.3d 446, 453 (Ky. App. 2010) (recognizing "four requirements for the effective creation of a trust"); *Rankin v. Rankin*, 12 S.W.2d 319, 320 (Ky. 1928) (recognizing that to create a trust under Kentucky law there must be a separation of the legal and equitable interests in the *res*).

Based on the preceding, this Court finds that Mrs. Greenly's interest in the Payments is not excluded from her bankruptcy estate.  As of the Petition Date, she held a contractual interest in the Payments that, upon execution of the Settlement Agreement and her waiver of her right to underinsured motorist benefits, vested in her.  *Novak v. Drake, et al. (In re Drake)*, Adv. No. 08-02118, 2012 WL 1095501, at *6 (Bankr. D. Conn. Mar. 29, 2012) (recognizing that debtor-beneficiary of structured settlement held a contractual interest in the periodic payments); *In re Abbott*, Bky. No. 10-57519, 2012 WL 699457, at *8 (Bankr. S.D. Oh. Mar. 2, 2012) (finding that "the right to receive [annuity payments] is

---

[4] In relevant part, the Annuity states:

> This annuity contract has been placed in the possession of Jennifer Anne Grace for the sole purpose of perfecting a security interest that the above named has in this contract.  The above named is not the owner of, and has no ownership rights in, this contract and may not assign or otherwise use it as any form of collateral.

Stipulation, Exh. F, p.2.

property of the estate unless eligible to be claimed exempt"). The fact that the Insurer purchased the
Annuity to funds its obligations under the Settlement Agreement and gain certain tax advantages for the
parties does not change this essential fact. Because this Court finds that the Payments are property of
Mrs. Greenly's estate, this Court must now evaluate the merits of the Trustee's objection to Mrs.
Greenly's claimed exemptions.

**Entitlement to Exemptions**

Having determined that Mrs. Greenly's right to the Payments vested prior to the Petition Date and
therefore inures to the benefit of her bankruptcy estate, this Court must now determine whether Mrs.
Greenly is entitled to the Claimed Exemptions. By claiming the Payments to be exempt, Mrs. Greenly
seeks to withdraw the Payments from her bankruptcy estate and immunize the Payments from the claims
of her prepetition creditors. As a statutory predicate, Mrs. Greenly relies on the Claimed Exemptions -
§§522(d)(10)(C), 522(d)(10)(E), and 522(d)(11)(E). If Mrs. Greenly is eligible to claim the Claimed
Exemptions, she is entitled to exempt only an amount of the Payments reasonably necessary to meet her
and her dependents' basic needs. Collier on Bankruptcy ¶522.09[10] (Alan N. Resnick & Henry J.
Sommer eds., 16th ed.); *In re Comp*, 134 B.R. 54, 550 n.6 (Bankr. M.D. Pa. 1991).

**Mrs. Greenly's Right to the Claimed Exemptions**

The burden is on the Trustee to establish by a preponderance of the evidence that Mrs. Greenly is
not entitled to the Claimed Exemptions. Fed. R. Bankr. P. 4003(c); *In re Miller*, 424 B.R. 171, 174
(Bankr. M.D. Pa. 2010); *In re Magnus*, 84 B.R. 976, 978 (Bankr. E.D.Pa. 1988). With regard to
§522(d)(10)(C),[5] the Trustee argues that Mrs. Greenly is not entitled this exemption because the
Payments were not received for compensation of personal injury or sickness and instead were "purely

---

[5] Section 522(d)(10)(C) provides in relevant part:

      (d) The following property may be exempted under subsection (b)(1) of this section:…

      (10) The debtor's right to receive—

      (C) a disability, illness, or unemployment benefit

11 U.S.C. §522(d)(10)(C).

done for tax reasons as part of the Settlement with the Insurer." Objection, ¶26. The Trustee has taken

the position that as a rule privately-funded structured settlements are not exempt under 11 U.S.C.

§522(d)(10)(C). With regard to §522(d)(10)(E),[6] the Trustee argues that Mrs. Greenly is not entitled to

apply a §522(d)(10)(E) exemption to the payment because the Payments were not received as

compensation for loss of income resulting from her injuries. Objection, ¶ 26. The Trustee has taken the

position that as a rule privately-funded structured settlements are also not exempt under 11 U.S.C.

§522(d)(10)(E). With regard to §522(d)(11)(E), the Trustee argues that Mrs. Greenly was not entitled to

this exemption because she has provided no evidence that the Annuity represents compensation for lost

future earnings and she has not proved that these monies are not necessary to support herself and her

family.

It is generally recognized that the purpose of all of the exemptions provided pursuant to

§522(d)(10), inclusive of the subsections relied on the Debtors, is to exempt *income* received by a debtor

as a substitute for *lost wages*. *Rousey v. Jacoway*, 544 U.S. 320, 331 (2005) (recognizing that the "types

of payments that a debtor may exempt under §522(d)(10)- all of which concern income that substitutes for

wages."); *In re Daly*, 344 B.R. 304 (Bankr. M.D. Pa. 2005) ("a benefit received in accordance to

§522(d)(10)(C) is viewed as a form of income that substitutes for wages."); *In re Chavis*, 207 B.R. 845,

848 (Bankr. W.D. Pa. 1997) (observing §522(d)(10) protects "payments on account of lost income due to

disability."); *In re Smith*, 179 B.R. 437, 446, n.4 (Bankr. E.D. Pa. 1995); 4-522 Collier on Bankruptcy

¶ 522.09[10]. This reading of the exemptions provided by §522(d)(10) is consistent with the legislative

history of this section.

---

[6] Section 522(d)(10)(E) provides in relevant part:

   (d) The following property may be exempted under subsection (b)(1) of this section:…

   (10) the debtor's right to receive—…

   (E) a payment under a stock bonus, pension, profit-sharing annuity, or similar plan or contract on
   account of illness, disability, death, age, or length of service, to the extent reasonably necessary for
   the support of the debtor and any dependent of the debtor…

11 U.S.C. §522(d)(10(E).

> Paragraph (10) exempts certain benefits akin to future earnings of the debtor.... Paragraph (11) allows the debtor to exempt certain compensation for losses. These include crime victim's reparation benefits, wrongful death benefits (with a reasonably necessary for support limitation), life insurance proceeds (same limitation), compensation for bodily injury, not including pain and suffering ( [proposed] $10,000 limitation), and loss of future earnings payments (support limitation). This provision in subparagraph (D)(11) is designed to cover payments in compensation of actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and suffering, or loss of earnings.

In re Williams, 181 B.R. 298, 300 (Bankr. W.D. Mich. 1995) (quoting H.R. REP. No. 595, 95th Cong.,

1st Sess. 362 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6318).

In the context of determining whether payments received pursuant to a structured settlement were

received on account of lost income, courts will typically rely on whether the debtor is disabled as a result

of the underlying accident. *Kaliner v. Murphy (In re Murphy)*, Bky. No. 98-36084, 2000 WL 49297, *2

(Bankr. E.D. Pa. Jan. 19, 2000) (finding that annuity payments received pursuant to structured settlement

were exemptible pursuant to §522(d)(10)(C) because parties agreed that the debtor was disabled as a

result of his injuries). However, the parties have stipulated that Mrs. Greenly is not disabled and this

Court therefore cannot rely on this fact to infer that the Payments were intended to compensate her for

lost income.

The record contains no evidence that her interest in the Payments was conferred upon her as

compensation for lost income. The record also contains no evidence as to the nature of Mrs. Greenly's

injuries that the Payments were intended to compensate. The Settlement Agreement provides that Mrs.

Greenly's right to the Payments was received in consideration of her release of her claim for *underinsured

motorist benefits*. The Settlement Agreement contains no designation of what amount may be attributed

to compensation for any specific injuries or losses. Because of the lack of evidence as to for what the

Payments were intended to compensate Mrs. Greenly for lost income, this Court cannot determine

whether some portion of the Payments were intended to compensate Mrs. Greenly for lost income. *See,

e.g., In re Murphy*, Bky. No. 98-36084, 2000 WL 49297, at *4 (Bankr. E.D. Pa. Jan. 19, 2000)

(recognizing that structured settlement did not designate the purpose of its payments and therefore the

payments could include damages arising from the loss of future earnings as well damages arising from

physical injury).  In addition, this Court will refrain from addressing whether structured settlements of tort

claims are necessarily outside the scope of §522(d)(10).  *See, e.g., In re Smith*, 179 B.R. 437, 446, n.4

(Bankr. E.D. Pa. 1995) (discussing split of opinion and expressing preference for including tort

settlements within the scope of §522(d)(10)'s exemptions).

Rather, this Court believes that the operative inquiry with regard to each of the Claimed

Exemptions is whether the exemption of the full amount of the Payments is necessary to the support Mrs.

Greenly and her dependents.  A debtor may claim a §522(d)(10) exemptions only to the extent reasonably

necessary to support a debtor and his or her dependents.  *Rousey v. Jacoway*, 544 U.S. 320, 325–26

(2005); *In re Morehead*, 283 F.3d 199, 208 (4th Cir. 2002); *In re Wegrzyn*, 291 B.R. 2 (Bankr. D. Mass.

2003).  The same is true with regard to Mrs. Greenly's 522(d)(11)(D) exemption.  The language of

§522(d)(11)(D) restricts its application to "payments in compensation for loss of future earnings" and

limits its amount to an amount "reasonably necessary for the support of the debtor and any dependent of

the debtor."  11 U.S.C. §522(d)(11)(E).  Therefore, this Court finds that the operative inquiry as to

whether Mrs. Greenly is entitled to her Claimed Exemptions is whether the Payments are reasonably

necessary for her support and the support of her dependents.

In determining whether payments are "reasonably necessary," courts consider a number of

factors, including the debtor's age, present employment, future employment prospects and general health.

*In re Brewer*, 154 B.R. 209, 213 (Bankr. W.D. Pa. 1993) (listing factors).  Moreover, the amount of the

exemption should be limited to account for a debtor's basic needs and not to maintain the debtor's present

lifestyle.  *In re Morehead*, 283 F.3d 199, 207 (4th Cir. 2002) ("the fresh start guaranteed by bankruptcy,

and supported by the exemption scheme, does not entitle a debtor to maintain the lifestyle to which he

was accustomed in better times"); *In re Brewer*, 154 B.R. 209, 213 (Bankr. W.D. Pa. 1993).  The Debtor

is presently 36 years old and she is presently employed as a retail clerk.  On average, she works thirty

hours per week.  The Debtors schedules show that they have a positive monthly net income of $39.59.

Moreover, the parties have stipulated that Mrs. Greenly's personal expenses are $1,858.  If the Monthly

Payments are excluded from her income, the parties agree that she would have a negative monthly income

of $966.  While the parties agree that she is not disabled, the Debtors maintain that as a result of her

injuries she suffers from migraines and that she is at a higher risk for enduring future neck injuries.  For

these reasons, this Court finds that the Monthly Payments are reasonably necessary for her support and

the support of her dependents.

However, this Court cannot say the same with regard to the Distribution Payments.  The Debtors'

second-amended schedule B states that the Debtors' total assets amount to $523,592 and their total

liabilities amount to $39,266.25.  Of their assets, $508,730 is attributable to Mrs. Greenly's interest in

future Payments.  According to the Debtors' summary of schedules, the withholding of the payments

would leave their estate with a net value of $(24,604.25).  If the Distribution Payment in the amount of

$27,049 received by Mrs. Greenly on January 1, 2012 is included in the Debtor's estate, the Debtors'

estates will be able to fund to complete repayment of their creditors.  But for the attempt by Mrs. Greenly

to withhold her interest in the Payments from her bankruptcy estate, she and her husband would have

sufficient assets to fund the complete repayment of all of their creditors.

Because the Distribution Payments do not appear necessary to meet Mrs. Greenly's basic needs

or the needs of her dependents, this Court finds that the exempting the total amount of the Payments to be

excessive.  This Court infers from the sporadic timing of the Distribution Payments that the parties to the

Settlement Agreement did not intend Mrs. Greenly to rely on the Distribution Payments to fund her Mrs.

Greenly's basic needs.  Even if the Distribution Payments are excluded from her income, Mrs. Greenly

will have still a positive monthly income.  *Walsh v. Helsel (In re Helsel)*, 326 B.R. 591, 602 (Bankr. W.D.

Pa. 2005) (recognizing that debtors were not entitled to exempt annual payments where, even if the

annual payments are excluded from the debtors' income, the debtors' would have a positive monthly net

income); *In re Brewer*, 154 B.R. 209, 214 (Bankr. W.D. Pa. 1993) (disallowing §522(d)(10) exemption

where debtor would still retain sufficient monies for her support and her dependents' support and would

allow for the full repayment of the debtor's unsecured creditors).  For these reasons, this Court will deny

Mrs. Greenly's Claimed Exemptions to the extent they relate to the Distribution Payments and

collectively limit the Mrs. Greenly's Claimed Exemptions to the amount of the Monthly Payments.  This

Court finds that this outcome insures both that the Debtors' creditors are paid and Mrs. Greenly is able to retain funds reasonably necessary for her support and the support of her dependents.

**Denial of Exemptions Due to Failure to Disclose Assets**

The Trustee argues that Mrs. Greenly should be denied the Claimed Exemption due to her failure to disclose the assets in the Debtors' schedules. The Trustee claims that exemptions must be denied whenever a debtor fails to disclose an asset. This statement of the law is not correct. Consistent with their rights under Fed. R. Bankr. 1009(a), debtors are generally permitted to remedy errors or omissions in their schedules through amendment. *Matter of Gershenbaum*, 598 F.2d 779, 782 (3d Cir.1979) (holding that a bankruptcy court "does not have discretion to deny leave to amend or to require a showing of good cause."); *In re Daly*, 344 B.R. 304, 310-11 (Bankr. M.D. Pa. 2005) (recognizing debtor has unlimited right to amend schedules prior to closing of case); *In re Robinson*, 292 B.R. 599, 608 (Bankr. S.D. Ohio 2003) (recognizing debtor's right to amend schedules to add omitted asset); *Kaliner v. Murphy (In re Murphy)*, Adv. No. 98-360-84, 2000 WL 49297, at *1 (Bankr. E.D. Pa. Jan. 19, 2000) (permitting debtors to amend schedules to disclose interest in annuity where there was no evidence of bad faith or fraudulent conduct). However, the right to amend may be limited by whenever the omission was motivated by bad faith as a part of a scheme to fraudulently conceal an asset or would otherwise cause prejudice to the estate's creditors. *Matter of Yonikus*, 996 F.2d 866, 871-72 (7th Cir. 1993) (upholding bankruptcy court's denial of exemption in asset where bankruptcy court found that omission of asset from schedules was done knowingly as a part of a fraudulent scheme to conceal the asset); *In re Daly*, 344 B.R. 304, 310 (Bankr. W.D. Pa. 2005) (recognizing that amendment of schedules to claim exemption in previous undisclosed asset may be denied if there is evidence that is was filed in bad faith or will prejudice a creditor); *In re Robinson*, 292 B.R. 599, 609 (Bankr. S.D. Ohio 2003) (finding that debtor's bad faith warranted denial of her right to amend her schedules); *In re Montanez*, 233 B.R. 791 (Bankr. E.D. Mich. 1999) (recognizing that pursuant to §105 powers a bankruptcy court may deny a claimed exemption in an undisclosed asset where a debtor has engaged in improper conduct); *Roeder v. Ziegler (In re Ziegler)*, 156 B.R. 151 (Bankr. W.D. Pa. 1993) (finding that debtor's conduct did not warrant denial of discharge). The

party objecting to an exemption based upon a debtor's fraudulent concealment of the underlying asset

bears the burden of establishing that the debtor acted with the requisite intent. *Matter of Yonikus*, 996

F.2d 866, 873 (7th Cir. 1993). Contrary to the Trustee's argument, an omission is not in and of itself

evidence of improper conduct. The Trustee has submitted no evidence that the omission of the Payments

from the Debtors' schedules was the result of bad faith or fraudulent conduct. Based on the record before

it, this Court cannot find that the Debtors knowingly and intentionally failed to report Mrs. Greenly's

interest in the Payments.[7]

### SUMMARY

This Court finds that the estate of Mrs. Greenly does possess an interest in the Payments and that

interest may not be excluded pursuant to §541(c)(2). However, this Court finds that only the Monthly

Payments are reasonably necessary for the support of Mrs. Greenly and her dependents. For this reason,

this Court will deny her Claimed Exemptions to the extent they apply to Mrs. Greenly's interest in the

Distribution Payments.

Accordingly, the Trustee's Objection will be sustained in part and denied in part.

BY THE COURT:

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

DATED: OCTOBER 12, 2012

---

[7] This decision is limited to the record before the Court and is not to be considered a determination of any objection
to the Debtors' discharge based upon their failure to disclose the Distributions on their original or first amended
Schedules B and C.